UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:06 CR 411 CEJ |
| ) | DDN |
| DALE BIRMINGHAM and ) | |
| DONALD HOUGHTON, ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This action is before the Court upon the pretrial motions of defendant Dale Birmingham which were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on August 16, 2006.

At the hearing, defendant Donald Houghton, with the advice of counsel, orally waived his right to file pretrial motions and to a pretrial motion hearing.

Defendant Dale Birmingham has orally moved to suppress evidence and statements (Doc. 17), and to suppress evidence (Doc. 29). From the evidence adduced at the hearing, the undersigned makes the following findings of fact and conclusions of law:

**FACTS**

1. On November 22, 2005, Jefferson County, Missouri, Police Detective Shawn Cope received an anonymous methamphetamine telephone hotline message that there were narcotics activities going on at 8850 Highway NN in Cedar Hill, Missouri, a rural residence. The message also stated that Dale Birmingham, the owner of the residence there, might be engaged in methamphetamine activities. Thereafter, Det. Cope went with six other officers to 8850 Highway NN. Det. Cope was then assigned to the Drug Task Force and had investigated about 100 clandestine methamphetamine manufacturing operations. Det. Cope knew of Birmingham from police records.

2. The officers arrived at 8850 Highway NN at 4:40 p.m. in several vehicles. They were dressed in plain, informal clothes, and wore tactical protective vests which bore the word "SHERIFF" on the front and the back. The officers' badges were also visible and they were armed with pistols. To get to the residence, the officers drove their vehicles down a gravel road from Highway NN. To get to the front entrance of the residence, the officers drove around the building. In doing so, they encountered a yellow Mazda Miata with the passenger door left open. Det. Cope believed that someone may have run from the Miata. Also on the premises was a Nissan pickup truck with a standard bed which was uncovered. Cope looked inside the truck's bed and saw 11 long guns. He also saw an HCL generator, a device frequently used in the manufacture of methamphetamine, approximately 15 feet from the front door of the residence. The officers also saw in plain view, on the right side of the front lawn, a burn site with the remains of the components of methamphetamine manufacturing. After viewing all these items, Det. Cope walked to the front door, knocked, and announced, "Sheriff's Officers." 3. After not getting a response in a short time, Det. Cope began discussing with the other officers the need to apply for a search warrant. While on the scene, he and Det. Scott Poe began preparing a search warrant affidavit. Other officers secured the firearms seen in the pickup truck bed.

4. Soon thereafter, two people came out of the house. When Det. Cope knocked on the house again, two more people came out, defendants Dale Birmingham and Donald Houghton. Det. Tom Horster asked Birmingham, believed to be the owner of the residence, whether the police could search the residence for any other person. Birmingham orally consented to the police entering and searching for the presence of other people; he did not allow the police to look for items related to methamphetamine manufacture.

5. Thereupon, taking less than one minute, the police entered the residence, looked in each of the rooms, and found no one else in the house. When doing so, they did not look in any container or open any drawer. Nevertheless, as they proceeded through the rooms, the police saw in plain view in the master bedroom a five foot tall cylinder of

compressed air with a lampshade on its top, in a bathroom three jars of liquid material, and in the kitchen a container of muriatic acid. These items were recognized by the police as related to the manufacture of methamphetamine and, especially the tall compressed air cylinder with the lampshade on top, something out of the ordinary for the master bedroom of a residence.

    6.    During this period of time, Det. Cope was preparing an affidavit for a search warrant. He then drove to the Jefferson County Sheriff's Office to finalize the affidavit. He did so and showed it to his supervisor who approved it. Det. Cope then took the affidavit to the Assistant Prosecuting Attorney, Sarah Donahue, for her review; she approved it and prepared an application for a search warrant. The two of them then went before Associate Circuit Judge William J. Wegge, Jr. Det. Cope swore to the application and affidavit before Judge Wegge.

    7.    The affidavit recounted the investigation which began on November 22, 2005, and presented the following information. When the officers arrived on November 22, they saw the Mazda Miata, with the door left open, and a Ford pickup truck with 11 long-barrel firearms in the open bed. The officers knocked at the front door. In a nearby burn site the officers saw four camp fuel cans, several empty pill blister packs, and many punctured aerosol cans. Near the burn site were a glass jar containing an unknown liquid, and several plastic funnels. Near the front door was a plastic bottle and tube, that was commonly used as an HCL gas generator. After 45 minutes, Dale Birmingham and Donald Houghton came out of the house. Birmingham said he owned the residence and gave permission for the officers to search for other persons inside the house. Inside the house the officers saw two rifles leaning against the wall near the front door. Also near the front door were a gallon of muriatic acid, in the kitchen they found another improvised HCL generator, in the master bedroom they found a large metal tank, and in the bathroom closet they found three glass jars of unknown liquids. Gov. Ex. 1.

    8.    Based on this affidavit, at 8:30 p.m. on November 22, 2005, Judge Wegge issued a search warrant for 8850 Highway NN in Cedar Hill,

Missouri to search for many listed items related to the manufacture and trafficking of methamphetamine.  Gov. Ex. 1.

9.  As soon as the warrant was issued, Det. Cope returned to 8850 Highway NN and the warrant was executed and a copy of the warrant was served on Birmingham.  Many items related to the manufacture of methamphetamine were seized.

## **DISCUSSION**

Defendant Birmingham has moved to suppress the evidence acquired by the police on November 22, 2005. Doc. 30.  The motion should be denied.  "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . .." U.S. Const. amend. IV; United States v. Weston, 443 F.3d 661, 666 (8th Cir. 2006).  When the officers arrived at 8859 Highway NN and entered the area surrounding the house, they were lawfully in an area where they had a right to be without a warrant. "[N]o Fourth Amendment search occurs when police officers who enter private property restrict their movements to those areas generally made accessible to visitors-such as driveways, walkways, or similar passageways." United States v. Khabeer, 410 F.3d 477, 481-82 (8th Cir. 2005).  No evidence indicated that this area was posted as closed to the public.  Therefore, the officers, as any member of the public, had a right to approach the public front of the house.

Being lawfully in the near vicinity of the house, the police officers saw indications of the presence of a methamphetamine manufacturing operation:  the rural setting of the residence; the open door of the automobile which indicated that someone fled from it into the house when the police were drawing near, which reasonably generated a suspicion of criminal activity;[1] an HCL generator near the front door of the residence; the burn site with the remnants of methamphetamine manufacturing; and, in plain view, the firearms in the open bed of the pickup truck.

---

[1] See California v. Hodari D, 499 U.S. 621, 623, n.1 (1991).

The officers were lawfully inside the residence to look for other individuals as a security measure, pursuant to the voluntary consent of Dale Birmingham the apparent owner of the premises. A warrantless search of a house does not violate the Fourth Amendment when the officer first obtains the voluntary consent of the owner. United States v. Siwek, 453 F.3d 1079, 1084 (8th Cir. 2006). "Consent to search is voluntary if it is the product of an essentially free and unconstrained choice by its maker . . . rather than the product of duress or coercion, express or implied." Siwek, 453 F.3d at 1084 (quoting United States v. Mancias, 350 F.3d 800, 804 (8th Cir. 2003)).

> Factors relevant to the voluntariness of a defendant's consent include: (1) the defendant's age; (2) the defendant's general intelligence and education; (3) whether the defendant was intoxicated or under the influence of drugs when he consented; (4) whether the defendant consented after being informed of his right to withhold consent or of his rights under Miranda . . .(5) whether, because the defendant had been previously arrested, he was aware of the protections afforded to suspected criminals by the legal system; (6) whether the defendant was detained and questioned for a long or short time; (7) whether the defendant was threatened, physically intimidated, or punished by police; (8) whether the defendant relied upon promises or misrepresentations made by the police; (9) whether the defendant was in custody or under arrest when the consent was given; (10) whether the defendant was in a public or secluded place; and (11) whether the defendant objected to the search or stood by silently while the search occurred.

United States v. Perry, 437 F.3d 782, 785 (8th Cir. 2006).

Here, defendant Birmingham voluntarily consented to the officers searching the house for other persons. Defendant is in his thirties, has been involved in the criminal justice system before, because Detective Cope knew of him through police records. He was not detained for any long period, there were no threats or misrepresentations made, and he was not under arrest. Even though several officers were present, there are no facts that indicate the consent was given under duress or coercion.

Defendant argues that he was not given Miranda warnings prior to his consent. However, a failure to give Miranda warnings prior to a consent to search does not invalidate a consent to search and the

- 5 -

warnings are not required. <u>United States v. Payne</u>, 119 F.3d 637, 643 (8th Cir. 1997).

When the officers searched the house, they did not search beyond the scope of their consent. Officers are limited to searching only in areas and for items authorized by the consent. <u>Walter v. United States</u>, 447 U.S. 649, 656 (1980). The scope of a consent search is measured by an objective reasonableness standard. <u>Siwek</u>, 453 F.3d at 1085. "The issue is what 'the typical reasonable person [would] have understood by the exchange between the officer and the suspect.'" <u>Siwek</u>, 453 F.3d at 1085 (quoting <u>Florida v. Jimeno</u>, 500 U.S. 248, 251 (1991)).

Here, Birmingham consented to the officers searching the residence for people. Therefore, the scope of the search was limited to where a person might be. The officers did not exceed this scope. They did a general sweep of the house and checked in a closet, all places a person might be located.

While conducting the consent search inside the residence, the officers lawfully saw in plain view the items used in or with the manufacture of methamphetamine. Officers may seize items in plain view when they are in an area they have a right to be pursuant to an exception to the warrant requirement. <u>Arizona v. Hicks</u>, 480 U.S. 321, 326 (1987); <u>United States v. Quezada</u>, 448 F.3d 1005, 1008 (8th Cir. 2006). Here, the officers had a right to be in the house pursuant to Birmingham's consent, and in plain view they saw two rifles against the wall, a gallon of muriatic acid near the front door, a HCL generator in the kitchen, a large metal tank in the bedroom, and three glass jars in the bathroom closet. All of these items were in plain view while the officers conducted their search for other people in the house.

Whether or not the firearms were seized from the pickup truck pursuant to the search warrant or without it, the firearms should not be suppressed. "Once probable cause is established, the vehicle can be searched without a warrant under the automobile exception to the warrant requirement." <u>United States v. Sanchez</u>, 417 F.3d 971, 976 (8th Cir. 2005). Here, the officers had probable cause to seize the firearms. The had received a tip about methamphetamine manufacture, they saw the burn site with remnants of methamphetamine ingredients, and an open car

door.  In an area where illegal methamphetamine was being manufactured, the police had probable cause to believe that the possession and presence of the firearms was illegal and that they were contraband located in a mobile motor vehicle which could be driven from the location.  The officers were authorized to secure and seize these firearms without a warrant.

The items seized inside the residence and within the curtilage of the residence, including the burn site and the other area around the residence, should not be suppressed, because they were seized pursuant to a lawfully issued search warrant.  The undersigned concludes that the search warrant was valid because the supporting affidavit established a "fair probability that contraband or evidence of a crime would be found in a particular place."  Id.; United States v. Sundby, 186 F.3d 873, 875 (8th Cir. 1999) (supporting affidavit must set forth sufficient facts that contraband or evidence of crime will be found).  "[T]he evidence as a whole [must] provide[] a substantial basis for finding probable cause to support the issuance of the search warrant."  United States v. Stevens, 439 F.3d 983, 987 (8th Cir. 2006) (quoting United States v. Terry, 305 F.3d 818, 822 (8th Cir. 2002)).

Here, the supporting affidavit established probable cause to search the residence and curtilage of the residence.  See United States v. Boyster, 436 F.3d 986, 991 (8th Cir. 2006) (Fourth Amendment protects curtilage, or area immediately adjoining house).  The affidavit explains how Detective Cope, who had narcotics training, lawfully drove up to the residence, and saw to the side of the house a burn site with remains of methamphetamine manufacturing, a vehicle with its door open, and 11 long guns in the back of a uncovered pick-up truck.  An HCL generator was in the front yard.  No one answer the door when they knocked.  While in the house with consent, the officers saw a tank of compressed air with a lampshade on it, three jars of liquid, two guns, and a container of muriatic acid.  Detective Cope explained his past experience with drug traffickers.  These facts support a finding of probable cause that the residence and curtilage at 8850 Highway NN would contain evidence of a crime or contraband.

Whereupon,

**IT IS HEREBY RECOMMENDED** that the oral motion of defendant to suppress evidence and statements (Doc. 17) be denied.

**IT IS FURTHER RECOMMENDED** that the motion of defendant to suppress evidence (Doc. 29) be denied.

The parties are advised they have until September 11, 2006,[2] to file written objections to this Report and Recommendation. The failure to file objections may result in a waiver of the right to appeal issues of fact.

/s/ David D. Noce

**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Signed on August 30, 2006.

---

[2]This is 11 calendar days from August 30, 2006. <u>See</u> Federal Rule of Criminal Procedure 45(a)(2).